IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF TYERCA R. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF TYERCA R. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLANT,
V.
KATHRYN H., APPELLEE.

Filed October 29, 2013.    Nos. A-13-368 through A-13-370.

Appeal from the County Court for Box Butte County: RUSSELL W. HARFORD, Judge.
Affirmed.

K.J. Hutchinson, Box Butte County Attorney, for appellant.

Michael T. Varn for appellee.

Jean Rhodes, guardian ad litem.

Irwin, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

The State filed separate petitions alleging that Tyerca R., Angel R., and Zekyel H. were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The county court for Box Butte County, sitting as a juvenile court, dismissed the juvenile petitions after finding that the petitions were not sufficiently pled to put the children's biological mother, Kathryn H., on notice that it was her behavior, rather than her live-in boyfriend's behavior, that was going to be at issue at the adjudication hearing. The State appeals. On our order, these three appeals have been consolidated. We affirm the juvenile court's decision in all three cases.

BACKGROUND

Kathryn is the mother of Angel, born in January 2008; Tyerca, born in November 2008; and Zekyel, born in October 2011. The children were removed from Kathryn's care on July 21,

- 1 -

2012, and placed into emergency protective custody amidst allegations that Tyerca and Angel had been abused by Kathryn's live-in boyfriend, Andrew L.

On July 23, 2012, before a juvenile petition had been filed, a hearing was held so that the State could "give the Court . . . information for the ex parte order so that these children can remain in the Department of Health and Human Services, who have custody of the children right now." At the hearing, the State called Colleen Busch, an investigator with the Alliance Police Department, "to swear to her affidavit as to the basis for [the children's] removal." Busch's testimony consisted of the following: The children were taken into emergency protective custody on July 21 because of suspected child abuse. Tyerca and Angel were covered in bruises. Busch interviewed both Tyerca and Angel, and one of the girls told her, "Mom said not to tell because the police will arrest dad." Tyerca and Angel stated that Andrew disciplines them by giving them a choice of two out of three punishments: slap, spank, or choke. Angel told Busch that Andrew had punished her on July 20 by slapping and choking her. Angel also told Busch that Kathryn was at work when Andrew punished her. The doctor who examined the girls described the injuries as a "classic case of extreme child abuse." Andrew was arrested on charges of felony child abuse and strangulation. The girls were removed, but the Department of Health and Human Services (DHHS) placed the children back with Kathryn, with a worker who was supposed to be in the home round-the-clock. At the end of the hearing, the juvenile court orally pronounced that the children should remain in the custody of DHHS "with placement they deem appropriate, which, I guess, is back in the family home with the mother." The next day, July 24, a written journal entry and order was filed in each case reflecting the court's oral pronouncement. Busch's affidavit, titled "Affidavit in Support of Custody and Petition," was also filed in all three cases on July 24--the affidavit filed in each case was identical, and all three children's names appeared in the caption of the affidavit.

Also on July 24, 2012, the State filed three separate petitions alleging that the children were within the meaning of § 43-247(3)(a). For Tyerca and Angel, the State's petitions alleged that each girl "is a Juvenile who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian, to wit: by being slapped, spanked, or choked by her custodian, Andrew . . . while in his care." For Zekyel, the State's petition alleges that he "is a Juvenile who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian, to wit: by living in a home where child abuse is occurring." All three petitions list Kathryn as the "Parent of the Juvenile" and Andrew as the "Guardian of the Juvenile," and reflect that Kathryn and Andrew were living at the same address.

In Busch's "Affidavit in Support of Custody and Petition," she detailed her investigation and that of other law enforcement agencies regarding the welfare of Tyerca, Angel, and Zekyel. The affidavit indicated that on July 21, 2012, Officer M. Perry went to Kathryn's residence on a welfare check after receiving a report that two girls had been observed to have multiple areas of bruising. With Kathryn present, Perry observed numerous bruises on both Tyerca and Angel and asked them how they got the bruises. The girls told Perry that they had been hitting each other. When Kathryn left the room, Angel showed Perry a bruise on her neck and Perry asked what had happened. In response, Angel placed both of her hands around her neck and demonstrated a choking hold. Perry then asked Angel, "'[W]ho did that?'" Angel replied, "'Daddy,'" and pointed to the hallway where Andrew was standing. Kathryn was told to take the children to the

police department. At the police department, Busch saw the children and determined that a forensic interview needed to be completed. Busch interviewed Angel, who started out by whispering that "she's not supposed to tell." Busch reassured Angel that it was okay to tell, and then Angel disclosed that Andrew punishes her and Tyerca when they are bad by giving them a choice of two punishments out of three: slap, spank, or choke. Angel stated that while at home on July 20, she got into trouble for fighting with her sister and Andrew told her to pick her punishments. Angel stated that she picked choking and spanking. According to Busch's affidavit, Angel stated that when Andrew choked her, "'it hurt and made her cry.'" Angel said that the punishments happen while her mother is at work. Angel stated that Tyerca is also given these punishments when Tyerca is "naughty." When asked for further details, Angel said her mother told her "'not to tell'" or their "'father'" would go to jail. Busch interviewed Tyerca, who was able to articulate that she was also punished in the same manner as Angel. Tyerca indicated that "'Daddy'" did the punishments.

Busch's affidavit further stated that she observed bruises on the girls' faces, heads, arms, hands, and legs and that the bruises appeared to be in different stages of healing. Busch stated that Andrew was taken into custody for felony child abuse. When Andrew was arrested, Kathryn stated that she never saw Andrew hit the children and that Andrew would "'never do that.'" The affidavit goes on to state that Kathryn continued to claim that the girls inflicted the injuries on each other and that Kathryn stated that when Andrew bonded out, he would continue to live with her and all three children.

Busch's affidavit also stated that the girls were taken to a hospital for medical treatment and examination. The girls were x-rayed and photographed. She then described the bruising on the girls in more detail. Busch stated that the doctor who examined the girls advised that "the injuries were clearly a result of child abuse."

Busch's affidavit set forth her belief that Tyerca and Angel had been subjected to child abuse by Andrew and that Zekyel resided with his sisters who have been victims of child abuse. Busch stated that the explanation of injuries by Kathryn is not consistent with the forensic interview and the medical evidence. Busch stated that Tyerca and Angel had been cruelly punished while in the care and custody of Andrew and Kathryn, which punishment is detrimental to the life and physical and mental health of Tyerca and Angel. Busch stated that Kathryn had neglected to protect and provide proper care for the children.

From July 21 through 27, 2012, the children remained in Kathryn's home with a caseworker present round-the-clock. However, on July 27, the children were placed in foster care. The record reflects that the children were moved to foster care, because Kathryn was visiting Andrew in jail and because DHHS felt that Kathryn would not change.

On October 18, 2012, a hearing was held on Kathryn's motion for change of placement, wherein Kathryn requested that the children be placed back into her home. Kathryn and her counsel were present at the hearing. While questioning a DHHS worker, the State asked, "And the allegations in this case are that the mother failed to protect them from Andrew . . . who is living in the home; is that right?" After testimony from the DHHS worker and Kathryn, the juvenile court denied Kathryn's motion for a change of placement.

A consolidated adjudication hearing was held on February 11, 2013. Kathryn was present at the hearing with her counsel. Andrew was neither present nor represented by counsel at the

adjudication hearing. The State called several witnesses who testified to the severity of the girls' bruising, as well as to Kathryn's claims that the girls bruised each other. After the State rested its case, Kathryn moved to dismiss the petitions for failure to prove a prima facie case on each petition. Kathryn's motion was denied. Kathryn then offered into evidence certified copies of all three juvenile petitions, which were received without objection. Kathryn renewed her motion to dismiss, alleging that the petitions were deficient. Kathryn argued that the petitions regarding the girls made no allegations that she did anything wrong. Kathryn also argued that the evidence was insufficient to adjudicate Zekyel, because the only allegation in his petition was that he was "living in a home where child abuse is occurring," but there was no evidence presented at the adjudication hearing that child abuse was occurring in the home. After hearing closing arguments, the juvenile court took the matter under advisement.

In its order filed on April 18, 2013, the juvenile court dismissed the juvenile petitions without prejudice after finding that the petitions did not provide Kathryn with proper notice and thus did not provide her with due process. The juvenile court stated:

> The issue in this case, when considering the opinion of the Court of Appeals in [*In re Interest of*] *Taeven Z.*[, 19 Neb. App. 831, 812 N.W.2d 313 (2012),] and [*In re Interest of*] *Christian L.*[, 18 Neb. App. 276, 780 N.W.2d 39 (2010),] is whether the juvenile petitions filed in these cases puts Kathryn . . . on notice that each of her children lacked proper parental care and each was at risk of harm because of the fault or habits of Kathryn . . . .

> The juvenile petitions in Tyerca's and Angel's case allege only that these children had been "slapped, spanked, or choked by her custodian, Andrew . . . **while in his care**." . . . Nothing has been pled by the State that would give Kathryn . . . any indication as to what it is that she didn't do to provide necessary parental care and that each of these two children were at risk of harm through her faults or habits. The juvenile petition specifically alleges behavior by Andrew . . . only, and only while in his care, and does not allege that either Kathryn . . . knew of the abuse and allowed or condoned it, or that she should have taken action to investigate the cause of the bruising on each child when she first made observation of that bruising. Because the petition did not allege specific facts giving her notice as to what it is that she did or didn't do, her motion for a directed verdict of dismissal is granted.

> The juvenile petition in Zekyel's case alleges that Zekyel is also subject to the jurisdiction of the Court because he is "living in a home where child abuse is occurring." The Petition does not allege who is committing the child abuse, nor does it allege that his siblings are being abused. The Court knows, because Zekyel lives in the same home as Tyerca and Angel, and because all three of these petitions were filed on the same day, based on the same set of facts, that [Andrew] was alleged to have abused Tyerca and Angel. It is also reasonable for the child's mother, Kathryn[,] to also assume that it is [Andrew] that is the focus of this juvenile proceeding. Again, the State has not pled facts that could be reasonably construed by Kathryn . . . to put her on notice that it is her behavior or lack of behavior that causes Zekyel to be at risk of harm. For the same reasons, the Court is granting the mother's motion for directed verdict and dismissing this juvenile petition.

The juvenile court dismissed the juvenile petitions "without prejudice to any new proceedings if the facts at the time of filing of new proceedings justify such proceedings and if the allegations properly provide Kathryn . . . with due process." Rather than file new petitions taking into consideration the deficiencies noted by the judge in the order, the State elected instead to appeal to this court.

ASSIGNMENTS OF ERROR

The State assigns that the juvenile court erred in (1) ignoring the "Affidavit[s] in Support of Custody and Petition" filed in each case that set forth in particularity the facts and allegations against Kathryn; (2) granting directed verdicts; (3) dismissing the State's petitions without prejudice; (4) failing to make a finding that the evidence presented at the adjudicatory hearing was sufficient to adjudicate the children under § 43-247(3)(a); (5) failing to admit exhibit 145, Kathryn's testimony as a witness from a separate criminal proceeding; and (6) failing to promote and protect the juveniles' best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Candice H.*, 284 Neb. 935, 824 N.W.2d 34 (2012).

In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's rulings. *In re Interest of Candice H., supra*.

Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *In re Interest of Erick M.*, 284 Neb. 340, 820 N.W.2d 639 (2012).

ANALYSIS

Nebraska's pleading system has many purposes and functions, not the least of which is to provide adequate notice as to what allegations a party will be required to meet at trial. *In re Interest of Clifford M.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998). When the State seeks to have a child adjudicated under § 43-247, Neb. Rev. Stat. § 43-274 (Reissue 2008) is the governing statute for how the juvenile petition should be pled. Section 43-274(1) states in relevant part:

> The county attorney, having knowledge of a juvenile in his or her county who appears to be a juvenile described in subdivision (1), (2), (3), or (4) of section 43-247, may file with the clerk of the court having jurisdiction in the matter a petition in writing specifying which subdivision of section 43-247 is alleged, setting forth the facts verified by affidavit, and requesting the court to determine whether support will be ordered pursuant to section 43-290. Allegations under subdivisions (1), (2), and (4) of section 43-247 shall be made with the same specificity as a criminal complaint. It shall be sufficient if the affidavit is based upon information and belief.

The State argues that Busch's "Affidavit in Support of Custody and Petition" was filed in each case "simultaneously" with the petitions. The State argues that the petitions alleged the specific section, § 43-247(3)(a), under which the jurisdiction of the juvenile court was sought

and that the affidavits provided specific facts, information, and belief as to what fault or habits of Kathryn put the children at risk. Thus, the State's argument is that the petitions and affidavits collectively meet the statutory requirements of § 43-274 and provided proper notice to Kathryn. The State asserts that it was error for the juvenile court to not consider the petition and the affidavit together, since each document was file stamped on the same day. The State does not dispute the absence of specific allegations toward Kathryn in the petitions; rather, the State contends that the affidavits filed the same day provide the necessary facts.

Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning. *In re Interest of Erick M., supra*. We will not look beyond the statute to determine the legislative intent when the words are plain, direct, or unambiguous. *Id*. The plain language of § 43-274 indicates that the petition is to set forth the facts. The affidavit simply verifies the facts set forth in the petition, and the affidavit need only be based on "information and belief." Accordingly, we look solely to the petition to determine whether Kathryn was provided proper notice.

In *In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012), this court did an indepth analysis of the § 43-274 pleading requirements and standards for juvenile cases. In *In re Interest of Taeven Z.*, the State focused on the portion of § 43-274 that states "[a]llegations under subdivisions (1), (2), and (4) of section 43-247 shall be made with the same specificity as a criminal complaint." The State suggested that the exclusion of subsection (3) from that language meant that less specificity was needed for petitions brought under subsection (3). This court came to the opposite conclusion. We said:

> The mandate that allegations under § 43-247(1), (2), and (4) be made with the same specificity as a criminal complaint merely reconciles the pleading practice regarding juvenile offenders with that of adult criminals. And with respect to adults, it has long been held that it is generally sufficient if the information describes the crime in the language of the statute. See *Leisenberg v. State*, 60 Neb. 628, 84 N.W. 6 (1900). "Nebraska criminal procedure does not require a comprehensive and particularized factual description of elements for the offense charged in the information or complaint against a defendant." *State v. Schaaf*, 234 Neb. 144, 149, 449 N.W.2d 762, 766 (1989). We do not view the criminal pleading requirement as calling for "higher specificity." To the contrary, pleading in the language of the statute represents a conclusory rather than a strictly fact-based form of pleading.
>
> Section 43-247(3) cases, on the other hand, are not comparable to adult criminal cases, and the pleading standard for such cases stems from the requirements of due process in this context. As we quoted above, § 43-274(1) requires a § 43-247(3) petition to "set[] forth the facts verified by affidavit." The factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of § 43-247(3)(a). See *In re Interest of Christian L.*, 18 Neb. App. 276, 780 N.W.2d 39 (2010).

*In re Interest of Taeven Z.*, 19 Neb. App. at 836-37, 812 N.W.2d at 319. And "notice is a requirement of due process rather than a matter of jurisdiction." *Id*. at 838, 812 N.W.2d at 320. The issues in a case are framed by the pleadings. *Blaser v. County of Madison*, 285 Neb. 290,

826 N.W.2d 554 (2013); *In re Interest of Sabrienia B.*, 9 Neb. App. 888, 621 N.W.2d 836 (2001).

In the context of both adjudication and termination hearings, procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). An adjudication hearing is the trial state of a juvenile proceeding, in which the State must prove its allegations in the petition by a preponderance of the evidence. *Id*. Adjudication is a crucial step in proceedings possibly leading to the termination of parental rights. *Id*. Furthermore, parents have a fundamental liberty interest at stake, and the State cannot adjudicate a child except by procedures which meet the requisites of the Due Process Clause. *In re Interest of Mainor T. & Estela T., supra.*

In *In re Interest of Christian L.*, 18 Neb. App. 276, 780 N.W.2d (2010), the operative petition indicated that the grounds for adjudicating the child were that the condition of the house and the lack of appropriate food in the house placed him at risk of harm and were the fault of his mother. As a result, the mother was on notice that the condition of her house and the appropriateness of food in the house and those items' impact on the child's well-being would be at issue, and she was on notice to be prepared to defend against those actions. However, the bulk of the evidence presented by the State to the juvenile court was concerned with the mother's mental health, not with the condition of the house, the appropriateness of food available in the house, or either's relationship to the child's well-being. We concluded that the mother was not properly placed on notice that her mental health would be a basis for seeking to prove the allegation that the child lacked proper parental care and was at risk of harm through the mother's fault. We further found that the remaining evidence in the record was not sufficient to demonstrate that the child was at risk of harm based on the condition of the house or the lack of appropriate food. We therefore directed the juvenile court to dismiss the proceedings without prejudice.

In the instant case, the petitions regarding Tyerca and Angel did not allege facts providing notice to Kathryn that her behavior was at issue; rather, the allegations focused on her live-in boyfriend, Andrew. The only allegation in each petition was that Tyerca and Angel were juveniles who "lack[] proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian, to wit: by being slapped, spanked, or choked by her custodian, Andrew . . . while in his care." The allegations were directed solely at Andrew, not Kathryn. Therefore, the petitions were insufficient to put Kathryn on notice that her behavior would be at issue at the adjudication hearing. Accordingly, the juvenile court did not err in dismissing the State's petitions regarding Tyerca and Angel without prejudice.

The juvenile court also found the petition regarding Zekyel to be insufficient. The only allegation in the State's petition is that Zekyel "is a Juvenile who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian, to wit: by living in a home where child abuse is occurring." The petition lists Kathryn as the "Parent of the Juvenile" and Andrew as the "Guardian of the Juvenile," and reflects that Kathryn and Andrew were living

at the same address. The petition regarding Zekyel contains one very broad allegation, with nothing specifically mentioned about Kathryn's actions. As stated by the juvenile court:

> The Petition does not allege who is committing the child abuse, nor does it allege that his siblings are being abused. The Court knows, because Zekyel lives in the same home as Tyerca and Angel, and because all three of these petitions were filed on the same day, based on the same set of facts, that [Andrew] was alleged to have abused Tyerca and Angel.

We consider Zekyel's petition in context: Zekyel's petition was filed on the same day as Tyerca and Angel's petitions were filed; all three children resided in the same home; and as stated previously, the other petitions alleged that Tyerca and Angel were abused by Andrew, and the allegations in those petitions were directed solely at Andrew. Therefore, we agree with the juvenile court's finding that it was reasonable for Kathryn to believe that Andrew was the focus of the juvenile proceeding regarding Zekyel, not her. Under the circumstances of this case, we find that the State did not plead facts that put Kathryn on notice that her behavior would be at issue at the adjudication hearing regarding Zekyel. Accordingly, the juvenile court did not err in dismissing the State's petition regarding Zekyel without prejudice.

Having already found that the petitions were properly dismissed for failure to put Kathryn on notice, we need not address the State's remaining assignments of error regarding the sufficiency of the evidence presented at the adjudication hearing and the admissibility of exhibit 145. See *In re Trust Created by Hansen*, 281 Neb. 693, 798 N.W.2d 398 (2011) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

In summary, the State failed to allege facts in the petitions filed that were sufficient to put Kathryn on notice that her behavior, rather than her boyfriend's behavior, would be at issue. Pursuant to § 43-274(1), the petition is to set forth facts which are verified by affidavit. Although the facts asserted in the affidavit cause this court grave concerns about Kathryn's ability and/or willingness to protect her children from abuse by others, the law requires that proper notice be afforded to parents in these cases by setting forth sufficient facts in the petition, which are then verified by affidavit. Adjudication is a crucial step in proceedings possibly leading to the termination of parental rights. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). Parents have a fundamental liberty interest at stake, and the State cannot adjudicate a child except by procedures which meet the requisites of the Due Process Clause. *In re Interest of Mainor T. & Estela T., supra.*

## CONCLUSION

For the reasons stated above, we agree with the juvenile court that the juvenile petitions did not provide Kathryn with the requisite due process. Accordingly, we affirm the juvenile court's order dismissing the juvenile petitions without prejudice to any new proceedings if the facts at the time of the filing of new proceedings justify such proceedings and if the allegations properly provide Kathryn with due process.

AFFIRMED.