In re Interest of Trenton W. et al.,
children under 18 years of age.
State of Nebraska, appellee, v.
Richard W., appellant, and
Susan W., appellee.

___ N.W.2d ___

Filed June 16, 2015.    Nos. A-14-841 through A-14-845.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with due process is a question of law.
3. **Juvenile Courts: Parental Rights: Notice.** The factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013).
4. **Juvenile Courts: Constitutional Law: Due Process.** In the context of both adjudication and termination hearings, procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.
5. **Parental Rights.** Adjudication is a crucial step in proceedings possibly leading to the termination of parental rights.
6. **Parental Rights: Constitutional Law: Due Process.** Parents have a fundamental liberty interest at stake, and the State cannot adjudicate a child except by procedures which meet the requisites of the Due Process Clause.
7. **Statutes: Appeal and Error.** Absent a statutory indication to the contrary, an appellate court gives words in a statute their ordinary meaning.
8. **Juvenile Courts: Jurisdiction: Proof.** At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor child under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013), the State must prove the allegations of the petition by a preponderance of the evidence, and the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsections of § 43-247.
9. ____: ____: ____. While the State need not prove that the juvenile has actually suffered physical harm, at a minimum, the State must establish that without intervention, there is a definite risk of future harm.
10. **Juvenile Courts: Judgments: Jurisdiction.** Once a child is adjudicated under Neb. Rev. Stat. § 43-247 (Supp. 2013), both custodial parents are within the jurisdiction of the court, even if the adjudication is based upon the acts of only one parent.

Appeals from the County Court for Boone County: Stephen R.W. Twiss, Judge. Reversed and remanded for further proceedings.

Ted M. Lohrberg for appellant.

Jeffrey C. Jarecki, of Jarecki Law, P.C., L.L.O., for appellee Susan W.

Jeffrey M. Doerr, of Law Offices of Jeffrey M. Doerr, guardian ad litem.

Moore, Chief Judge, and Irwin and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Richard W. appeals, and Susan W. attempts to cross-appeal, from the order of the county court, sitting as a juvenile court, which adjudicated their five minor children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013). Because we find that there was insufficient evidence to support the adjudications based upon the actions of Richard, we reverse the judgment of the juvenile court adjudicating the children on that basis and remand the cause for further proceedings.

## BACKGROUND

Richard and Susan are the natural parents of five minor children: Jasmine W., born in 2001; Emily W., born in 2003; Ashlee W., born in 2004; Trenton W., born in 2007; and Bella W., born in 2012. On May 8, 2014, the State filed petitions to adjudicate each of the minor children under § 43-247(3)(a). The petitions alleged that Richard and Susan neglected or refused to provide proper subsistence, education, or other care necessary for the health, morals, or well-being of the children; that the children were in a situation dangerous to life or limb or injurious to their health and morals; and that the children lacked proper parental care by reason of the fault or habits of Richard and Susan. The petitions did not contain any specific factual allegations to support the general allegations stated above and were not accompanied by an affidavit.

The same day the petitions for adjudication were filed, however, the State filed motions for temporary custody which were accompanied by an affidavit. It alleged that three of the minor children were left in a motel room without adult supervision on May 7, 2014; that there was concern Richard and Susan were abusing prescription drugs and alcohol and failing to provide appropriate care for the children; and that the family had been involved with Child Protective Services in Tennessee before moving to Nebraska. Both parents entered a denial to the allegations. An adjudication hearing was held, during which the following evidence was adduced:

Richard and Susan moved with their children from the State of Tennessee to Albion, Nebraska, in early April 2014. Susan enrolled the children in school immediately. The family moved in with Susan's sister, Sheryl B., where they planned to live temporarily until they could obtain their own housing. On May 5, however, they were asked to leave Sheryl's home due to conflict between Susan and Sheryl. Richard and Susan had no other relatives in Albion, so they arranged to stay three nights—May 5 through 7—at a local motel where Richard was working.

On May 7, 2014, Ginger Buhl-Jorgensen, an investigator with Child Protective Services in Nebraska, traveled to Albion to investigate a report she had received expressing concern for the children due to prescription drug and alcohol abuse by Richard and Susan. Buhl-Jorgensen began her investigation by researching the history of the family, which included contacting the State of Tennessee. She was advised that Child Protective Services in Tennessee had two open investigations concerning the family and had attempted to open a case before the family left the state.

Buhl-Jorgensen was accompanied by Albion police officer Joe Predmore to the children's school, where they made contact with Trenton and Emily. After learning that Jasmine and Ashlee were absent from school that day, Buhl-Jorgensen and Officer Predmore proceeded to the motel where the family was staying. They located 12-year-old Jasmine, 9-year-old Ashlee, and 18-month-old Bella in the family's motel room,

but no adults were present. The children advised them that their parents had gone to court.

While Buhl-Jorgensen and Officer Predmore were there interviewing the children, Richard called the motel room to check on them. Richard spoke to Buhl-Jorgensen on the telephone at that time. He explained that he had accompanied Susan to her court appearance that morning in the Antelope County Courthouse in Neligh, Nebraska, and that he was currently walking back to Albion. When asked why Jasmine and Emily were not in school that day, Richard advised that he and Susan could not take Bella to court with them, so they decided to keep Jasmine and Ashlee home from school to take care of Bella. Buhl-Jorgensen asked Richard about his ability to pay for additional nights at the motel or any other plans for living accommodations for the family, to which Richard stated that he would "figure it out." He did not indicate whether he had any financial resources to obtain housing past May 7, 2014. However, Susan testified that they had already made arrangements for Richard and the children to stay with a friend in Norfolk who was going to pick them up that afternoon when Richard got back from Neligh.

Buhl-Jorgensen testified regarding her observations of the motel room. She stated that it had two beds, one bathroom, and a small refrigerator with "an opened gallon of milk, four to five slices of cheese, a can of peaches, two small cans of Vienna sausages, and some pop." There were extra "comforter type blankets" on the floor next to the beds. She did not observe any alcohol or alcohol containers in the room, but she did locate two prescription medication bottles sitting on a table. Buhl-Jorgensen read the labels and noted that both medications, Valium and oxycodone, were prescribed to Susan. The Valium prescription was filled on April 24, 2014, for 60 pills, but there was only 1 pill left in the bottle. The oxycodone prescription was filled on April 23 for 150 pills, and that bottle was empty. Based on this information, Buhl-Jorgensen believed that there were too many pills missing from the bottles and that the prescriptions were not being followed as prescribed, although she acknowledged at the

hearing that she did not know what happened to the "missing" pills. Buhl-Jorgensen and Officer Predmore felt that the children were in an unsafe, unstable situation; they were removed from the motel and placed temporarily with Susan's sister, Sheryl.

Richard and Susan both testified at the hearing regarding the events that occurred on May 7, 2014. They left Albion that day at approximately 7 a.m. to walk to Susan's court appearance in the Antelope County Courthouse in Neligh. Before leaving, they ate continental breakfast with the children at the motel and then walked Trenton and Emily to school. Susan testified that it was important for her to appear in court, as she was scheduled to begin serving a 45-day jail sentence on a 4-year-old assault conviction, and that there would be a warrant issued for her arrest if she failed to appear. Richard accompanied Susan to court in order to retrieve her bond money, which was needed to help support the family. Richard and Susan agreed that it was more important for Richard to obtain the bond money than it was for Jasmine and Ashlee to go to school that day.

The Antelope County Courthouse is located in Neligh, which is approximately 26 miles from Albion. Richard and Susan had to walk, because although they had a vehicle, neither had a valid driver's license. Susan testified that she had recently been arrested for driving under suspension, so she did not want to risk getting arrested again for driving. They were not planning on walking the whole way, but instead hoped to find a ride along the way. They walked approximately 7 miles before a farmer agreed to take them the rest of the way to Neligh. Richard obtained the bond money and arrived back in Albion at approximately 3:30 p.m.

The evidence at the hearing established that Jasmine was less than a month away from her 13th birthday at the time of this incident. She had watched Bella previously and knew how to take care of her. Buhl-Jorgensen testified that some 13-year-old children are not capable of supervising younger children, but acknowledged that "plenty of them are." Susan testified that Jasmine was "a responsible young lady" and that she and Richard felt "[v]ery confident" leaving Jasmine

and Ashlee to care for Bella. Richard and Susan made sure there was sufficient food for lunch in the refrigerator, as well as milk for Bella. Both girls had access to a telephone in the room and knew to call the 911 emergency dispatch service if there were an emergency. In addition, the children were told that Richard's boss, whom they had met, would be available at the front desk if they needed anything, or that they could call Richard's cell phone. Richard testified that he called the motel room every 30 to 40 minutes to check on them and make sure everything was "okay."

Susan's sister, Sheryl, testified regarding Richard's and Susan's abuse of alcohol and prescription drugs while they were living with her. She described one occasion during the first week in May when she came home from work to find Richard and Susan drinking alcohol while all of the children were home. She found an empty 24-pack of beer and an empty 12-pack of beer by the trash, and empty beer cans were scattered all over the living room.

Sheryl further testified that she had concerns about Richard's and Susan's abusing prescription drugs. She observed Susan in an "altered state of mind" or exhibiting strange behavior on a daily basis. On one occasion, she and Susan took the children to the park, but Susan was "out of it" and spent the entire time "staring at the sky." About a week before they were asked to leave, Sheryl observed Susan give Richard four of her prescription oxycodone pills and then saw Richard immediately ingest at least one of them.

Both Richard and Susan denied having abused prescription drugs or alcohol since moving to Nebraska. Regarding the "missing" pills, Susan testified that she had transferred them to a single container, along with her other prescription medications, so that they would be easier to transport and she would have them while serving her jail sentence. Susan further testified that she never took more medication than she was prescribed and that she never gave any of her medication to Richard.

In addition to the above evidence, the State presented evidence concerning Jasmine's school attendance, a video Susan recorded of Jasmine, testimony that the children had lice, and

testimony that Richard and Susan inquired about purchasing drugs from Sheryl's former boyfriend. Richard objected to the evidence on the basis of relevance and due process, arguing that there were no allegations in the petition concerning those issues and that he had not received notice the State was seeking adjudication on those bases. The objections were overruled.

Following the hearing, the juvenile court issued a written order adjudicating the children as within the meaning of § 43-247(3)(a). Richard timely appeals, and Susan attempts to cross-appeal.

## ASSIGNMENTS OF ERROR

On appeal, Richard assigns that the juvenile court erred in (1) overruling his objections to the admission of certain evidence concerning issues not raised in the petition for adjudication and (2) finding sufficient evidence to support adjudication when the State failed to prove that the allegations posed a definite risk of future harm to the minor children.

In her attempted cross-appeal, Susan, as appellee, assigned that the juvenile court erred in finding sufficient evidence to support the adjudications. Because Susan filed a notice of appeal after Richard's appeals were perfected, Susan is considered an appellee. See Neb. Ct. R. App. P. § 2-101(C) (rev. 2014). As an appellee attempting to file a cross-appeal, Susan was required to follow the procedures outlined in the Supreme Court rules, which she failed to do. See Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014). Therefore, we will not consider Susan's assigned error except as in support of the arguments raised by Richard.

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013). The determination of whether the procedures afforded an individual comport with due process is a question of law. *Id.*

## ANALYSIS

*Admissibility of Evidence.*

Richard first assigns that the district court erred in overruling his objections to the admissibility of evidence related to the children's school attendance, a video Susan recorded of Jasmine, testimony that the children had lice, and testimony that Richard and Susan inquired about purchasing drugs from Sheryl's former boyfriend. Richard argues that neither the petition for adjudication nor the affidavit accompanying the motion for temporary custody contained any allegations concerning those matters and that therefore, he was not provided notice that the State was seeking to adjudicate the children on those bases. We agree.

[3-6] The factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of § 43-247(3)(a). *In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012). In the context of both adjudication and termination hearings, procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker. *In re Interest of Christian L.*, 18 Neb. App. 276, 780 N.W.2d 39 (2010). Adjudication is a crucial step in proceedings possibly leading to the termination of parental rights. *Id.* Parents have a fundamental liberty interest at stake, and the State cannot adjudicate a child except by procedures which meet the requisites of the Due Process Clause. *In re Interest of Christian L., supra.*

In *In re Interest of Taeven Z., supra*, we analyzed the pleading requirements of a juvenile petition and determined that due process requirements apply to petitions filed under § 43-247(3). We determined that pursuant to Neb. Rev. Stat. § 43-274(1) (Reissue 2008), in effect at the time *In re Interest of Taeven Z., supra*, was decided and at the time the present petition was filed, required that a § 43-247(3) petition "'set[]

forth the facts verified by affidavit.'" 19 Neb. App. at 837, 812 N.W.2d at 319. (This requirement is now codified at Neb. Rev. Stat. § 43-261 (Cum. Supp. 2014).)

Here, the petitions did not contain any specific factual allegations to give Richard notice of the bases upon which the State was seeking adjudication. Rather, it merely alleged, in the language of the statute, that Richard and Susan neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of the children; that the children were in a situation dangerous to life or limb or injurious to their health and morals; and that the children lacked proper parental care by reason of the fault or habits of Richard and Susan. We find that the petitions were insufficient to meet the notice requirement set forth in *In re Interest of Taeven Z., supra*, and therefore, Richard's objections on the basis of lack of notice should have been sustained.

[7] We note that on the same day the petitions were filed, the State also filed motions for temporary custody and a supporting affidavit. Contained within that affidavit are specific facts relating to the incident when Jasmine, Ashlee, and Bella were left at the motel room without adult supervision, a concern that their parents were abusing prescription drugs and alcohol, and the parents' involvement with Child Protective Services in Tennessee. We do not view the facts contained within this affidavit as being a substitute for the requirements of § 43-274 that the "petition . . . set[] forth the facts verified by affidavit." Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning. *In re Interest of Erick M.*, 284 Neb. 340, 820 N.W.2d 639 (2012). The plain language of § 43-274 indicates that a petition is to set forth the facts. The affidavit simply verifies the facts set forth in the petition. Accordingly, we look solely to the petitions to determine whether Richard was given proper notice.

Although the petitions were factually insufficient to provide notice of *any* basis upon which the State was seeking adjudication, Richard does not contest the sufficiency of notice with respect to evidence that the children had been left unsupervised at the motel and evidence regarding his

alleged prescription drug and alcohol abuse. In fact, Richard conceded at the adjudication hearing that he had been put on notice of those allegations through the affidavit attached to the motion for temporary custody. Accordingly, we find that the evidence related to those allegations was properly considered by the juvenile court in determining whether to adjudicate the minor children, but the remaining evidence, to which Richard objected on the basis of lack of notice, was not properly admitted and should not have been considered. Therefore, we will not consider it when analyzing Richard's next assignment of error regarding the sufficiency of the evidence to support the adjudications.

*Sufficiency of Evidence.*

Richard next assigns that the juvenile court erred in finding sufficient evidence to support adjudication, because the State failed to prove that his alleged prescription drug and alcohol abuse or leaving the children unattended at the motel posed a definite risk of future harm to the children. We agree that the State failed to prove that the children faced a definite risk of future harm without intervention by the juvenile court based upon the alleged actions of Richard.

[8,9] At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor child under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence, and the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsections of § 43-247. *In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012). While the State need not prove that the juvenile has actually suffered physical harm, at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id.*

The State presented evidence that Richard and Susan left Jasmine, Ashlee, and Bella in a motel room for several hours without adult supervision while they walked to Neligh for Susan's court appearance. Richard and Susan ensured that the children ate breakfast before they left and that there was sufficient food for lunch and snacks. Jasmine was less than a month

away from her 13th birthday at the time, and Susan testified that Jasmine was responsible and capable of caring for Bella. There was a telephone in the room, and both Jasmine and Ashlee knew how to dial 911 in the case of an emergency. In addition, the children knew that they could call Richard's cell phone or contact Richard's boss at the front desk if they needed anything. Buhl-Jorgensen acknowledged at the hearing that "plenty" 13-year-old children are capable of providing supervision for younger children. Based on this evidence, we cannot say that there was a definite risk of future harm to the minor children or that they were neglected, in a situation dangerous to life or limb, or lacked proper parental care under the circumstances. We therefore find that the court erred in adjudicating the children on this ground.

Regarding the use of alcohol and prescription drugs by Richard, we find that there was no evidence the minor children were affected by such behavior or that it placed the children at risk of harm. The only evidence presented as to Richard's alleged alcohol abuse was Sheryl's testimony that he and Susan drank heavily on one occasion while the children were present in the home. We reversed an adjudication based upon similar evidence in *In re Interest of Brianna B. & Shelby B.*, 9 Neb. App. 529, 614 N.W.2d 790 (2000). There, the evidence established a pattern of drinking by both parents and, in particular, one night of heavy drinking after the children went to bed. We found that although there was evidence that the parents had consumed alcohol on occasions when the children were present in the home, there was no evidence that their alcohol use had any impact on the children or that the children were placed in harm or lacked proper care as a result. *Id.* Similarly, here, while there was evidence that the children were in the home during Richard's and Susan's drinking binge, there was no evidence that the children witnessed the drinking or were affected by it in any way. Thus, we find that Richard's use of alcohol on this one occasion, although excessive, is insufficient to support an adjudication due to the lack of evidence that his alcohol use had any impact on the children or that the children were placed in harm or lacked proper care as a result.

Regarding Richard's alleged use of prescription medication, the only evidence presented was Sheryl's testimony that she observed Susan give him four of her prescription oxycodone pills and then saw Richard immediately ingest at least one of them. Both Richard and Susan denied those allegations. Assuming Sheryl's testimony is true, we find that this isolated incident, without any evidence of its effect on the children, is insufficient to support adjudication. While taking an unprescribed medication may be illegal, a parent's illegal activity—without more—is not sufficient to adjudicate a child. *In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012). Furthermore, the State failed to adduce any evidence regarding whether Richard had a history of drug use, whether the children were present when Richard ingested drugs, or whether they were in any way affected by Richard's action. No evidence was presented that allowed a reasonable inference that Richard's alleged abuse of prescription drugs placed the children at risk for harm. See *In re Interest of Carrdale H.*, 18 Neb. App. 350, 781 N.W.2d 622 (2010) (reversing adjudication based upon father's possession of crack cocaine). Because there is no evidentiary nexus between Richard's consumption of drugs and alcohol and any definite risk of future harm to the minor children, the trial court erred in adjudicating on this ground.

Despite our determination that the State failed to prove by a preponderance of the evidence that the children were at definite risk of future harm due to Richard's actions, Susan failed to properly perfect an appeal and, therefore, the adjudications still stand. See *In re Interest of Devin W. et al.*, 270 Neb. 640, 707 N.W.2d 758 (2005).

In *In re Interest of Devin W. et al., supra*, the State filed a petition alleging that a minor lacked proper parental care by reason of the fault or habits of his mother. The juvenile court found him to be a child as defined under § 43-247(3). At the time, the minor was residing with his mother and father. At a later hearing, the court determined it would be in the child's best interests if he was removed from the physical custody of his parents and placed in foster care. The father appealed for the reason that there were no allegations that the child

lacked proper parental care by reason of the conduct of the father. On appeal, we reversed and remanded with directions to dismiss the proceedings. On further review, the Nebraska Supreme Court reversed our decision.

[10] In reaching its conclusion, the Supreme Court determined that the adjudication based on allegations against the mother was sufficient to extend jurisdiction over the father based upon the language of § 43-247. This statute grants to the juvenile court exclusive jurisdiction as to any juvenile defined in § 43-247(3) and, under subsection (5), jurisdiction over the parent, guardian, or custodian who has custody of such juvenile. Therefore, once a child is adjudicated under § 43-247, both custodial parents are within the jurisdiction of the court, even if the adjudication is based upon the acts of only one parent. The court specifically disapproved of the concept that a child is "adjudicated as to" one parent or the other because it is the child, not the parent, that is adjudicated in order to protect the child's rights. The court distinguished that the parents' rights are determined in the dispositional phase of the case, not the adjudication phase.

Therefore, under the reasoning of *In re Interest of Devin W. et al., supra*, the children in the present case remain adjudicated under § 43-247 based upon the acts of Susan. Our decision here affects only the nature of the dispositional order concerning the placement of the children and the rights of the parties. Richard's rights concerning the children and their placement will be determined during that phase of the case.

## CONCLUSION

Upon our de novo review of the record, we find that the State failed to adduce sufficient evidence to support the adjudications of the children based upon Richard's actions, and we therefore reverse the adjudications on that ground; however, because Susan did not properly appeal, the trial court's order adjudicating the juveniles as children under § 43-247(3)(a) remains. We remand for further proceedings.

Reversed and remanded for
further proceedings.